UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BRIAN S. SOLORIO, a single
person,

               Plaintiff,

    v.

LOUISVILLE LADDER, INC., a
corporation,

               Defendant.

NO.  CV-06-0285-EFS

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

A hearing was held in the above-captioned matter on March 7, 2008, in Richland.  Plaintiff Brian Solorio was represented by Dustin Deissner, while William Schroeder appeared on behalf of Defendant Louisville Ladder, Inc.  Before the Court was Louisville Ladder's Motion for Summary Judgment.  (Ct. Rec. 13.)  After reviewing the submitted material and relevant authority and hearing oral argument, the Court was fully informed.  This Order serves to supplement and memorialize the Court's oral ruling granting Defendant's motion.

///

///

///

///

///

ORDER -- 1

**A.    Factual Background**[1]

     Mr. Solorio fell from a Louisville four-foot fiberglass stepladder on August 17, 2004, while working for his employer, a heating and air conditioning contractor. (Ct. Rec. 33 ¶ 1.)  Mr. Solorio's employer bought the ladder from a retailer, which had purchased the ladder from Louisville Ladder.  *Id.*  Mr. Solorio was supplied the ladder by his employer; he did not purchase the ladder from his employer.  *Id.*  The ladder's label indicated it was rated for 300 pounds.  *Id.* ¶ 2.

     Mr. Solorio claims the accident happened when he was standing on the second step from the bottom of the ladder, which had all four feet on a firm level surface.  *Id.* ¶ 3. Mr. Solorio claims the ladder felt "spongy" while he was attempting to put a large rectangular sheet metal box into the rafters of a home under construction.  *Id.* ¶ 4.  He claims he felt the ladder go to his left and, then when he shifted his weight to his right, the ladder gave way to his left.  *Id.*  Mr. Solorio threw the rectangular box with his left arm toward the rafters and then fell to his right onto his outstretched arm.  *Id.*

---

     [1]  In ruling on a motion for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, depositions, and the joint statement of material facts (Ct. Rec. 33), in the light most favorable to Mr. Solorio, the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*).  The following factual recitation was created utilizing this standard.

ORDER -- 2

Mr. Solorio does not know what happened to the ladder during his fall. *Id.* ¶ 5. He theorizes that the inward bending of the ladder's front rails caused the ladder to become unstable, which caused him to fall. *Id.* ¶ 5.  Before his fall, Mr. Solorio had climbed up and down the ladder several times without any problems.  *Id.* ¶ 6.

In the summer of 2006, a mechanical contractor conducting a repair at the offices of Mr. Solorio's attorney saw the damaged ladder and decided to use the ladder after bending its damaged components back to their near normal positions. *Id.* ¶ 7.  He then used the ladder for two or three hours without any problems.  *Id.*

In May 2007, Louisville Ladder's retained expert, Dr. Erick Knox, stood on the ladder with another individual. *Id.* ¶ 8.  Their combined weight exceeded 400 pounds, which is more than the ladder's 300 pound load capacity rating.  *Id.*  The ladder held their combined weight and was sturdy and stable while the individuals moved up and down; there is no indication the individuals moved side to side.  *Id.*; (Ct. Rec. 27 ¶ 9).  In May 2007, Dr. Knox also dynamically loaded the ladder by jumping repeatedly on the second step from the bottom. (Ct. Rec. 33 ¶ 9.)  The ladder was sturdy and stable.  *Id.*

Photographs of the ladder taken after the accident, but before the mechanical contractor altered the ladder, show both front side rails bent inward.  *Id.* ¶ 10.  The left front side rail was bent inward more than the right front side rail.  *Id.* Additionally, the bottom step had an upward bend.  *Id.*  Because the front side rails of the stepladder slant outward and they are farther apart at ground level than at the top of the ladder, forces applied to those rails while someone is standing

ORDER -- 3

on the ladder in normal use would tend to bend them outward.  *Id.* ¶ 11.

Mr. Solorio did not identify any expert witnesses in advance of his September 25, 2007, disclosure deadline.  *Id.* ¶ 12; (Ct. Rec. 11 ¶ 2(a)).  Mr. Solorio conceded in a discovery response that he is unaware of any design or manufacturing defects in the ladder. (Ct. Rec. 33 ¶ 13.)

**B.    Summary Judgment Standard**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion.  *Id.* at 322.  "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts.  In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

ORDER -- 4

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**C.    Authority and Analysis**

    1.    "Tort" Causes of Action

Because Mr. Solorio is not pursuing his construction defect, design defect, failure to warn, or post-failure to warn claims (Ct. Rec. 26 p. 4), Louisville Ladder is granted summary judgment on these claims.

    2.    Implied and Express Warranty Causes of Action

In Washington, goods are expected to comply with express and implied warranties.  RCW 62A.2-313, -314, -318.  Lack of privity, however, is a defense to claims of breach of warranty.  *Tex Enterps., Inc. v. Brockway Standard, Inc.*, 149 Wn. 2d 204, 627-28 (2003).  There are two types of privity: vertical and horizontal.  *Id.* at 628.  "A 'horizontal non-privity plaintiff' is not a buyer of the product in question, but is one who consumes or is affected by the goods."  *Id.* (internal citation omitted).  The 'vertical non-privity plaintiff' is a buyer who is in the distributive chain, but who did not buy the product

ORDER -- 5

1  directly from the defendant." *Id.* (internal citation omitted). What

2  warranties apply to the plaintiff depends on the privity relationship

3  that plaintiff has to the manufacturer. 1 White & Summers, Uniform

4  Commercial Code § 11-2 (5th ed.).

5        Here, Louisville Ladder manufactured the ladder and sold it to a

6  retailer. The retailer in turn sold it to Mr. Solorio's employer.

7  Accordingly, Mr. Solorio's employer is in vertical privity with

8  Louisville Ladder. Mr. Solorio did not purchase the ladder from his

9  employer, but rather was using it during the course and scope of his

10 employment. Therefore, he is in horizontal privity with his employer

11 but not in vertical privity with Louisville Ladder.

12       a.   *Implied Warranty of Merchantability*

13       Louisville Ladder contends neither express nor implied warranties

14 apply to Mr. Solorio because Mr. Solorio is not in vertical privity with

15 it. The Court agrees with Louisville Ladder that any implied warranties

16 set forth by RCW 7.72.030(2)[2] and RCW 62A.20-314[3] do not run to Mr.

17 Solorio because he is not in vertical privity with Louisville Ladder.

18 *See Tex Enterps.*, 149 Wn. 2d at 209-11; *Anderson v. Dreis & Krump Mfg.*

19

20 ─────────────────

21       [2]  RCW 7.72.030(2) states:

22       A product manufacturer is subject to strict liability to a
         claimant if the claimant's harm was proximately caused by

23       the fact that the product was not reasonably safe in
         construction or not reasonably safe because it did not

24       conform to the manufacturer's express warranty or to the
         implied warranties under Title 62A RCW.

25       [3]  RCW 62A.2-314 provides that a merchantability implied warranty

26 is "implied in a contract for [the sale of goods] if the seller is a

27 merchant with repect to goods of that kind."

28 ORDER -- 6

*Corp.*, 48 Wn. App. 432 (1987); *see also Weaver v. Ralson Motor Hotel*, 135 Ga. App. 536 (1975).  In addition, because Mr. Solorio is not in vertical privity with Louisville Ladder, he does not benefit from the *Touchet Valley*[4] "third-party beneficiary" exception.  *See Tex Enterps.*, 149 Wn. 2d at 210.  Further, RCW 62A.2-316(4)[5]'s statutory limitation on the application of the privity defense and RCW 62A.2-318[6]'s warranty extension do not apply here because the ladder was purchased for "commercial or business use," not for household use.  Accordingly, Mr. Solorio may not pursue a breach of the implied warranty of merchantability cause of action.  Louisville Ladder's motion is granted in part.

        b.   *Express Warranties*

    The Washington Supreme Court recognized, "[t]he privity requirement is relaxed . . . when a manufacturer makes express representations, in

---

[4]  *Touchet Valley Grain growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn. 2d 334 (1992).

[5]  Section 62A.2-316(4) states

    . . . in any case where goods are purchased primarily for personal, family or household use and not for commercial or business use, disclaimers of the warranty of merchantability or fitness for particular purpose shall not be effective to limit the liability of merchant sellers except insofar as the disclaimer sets forth with particularity the qualities and characteristics which are not being warranted. . . .

[6]  RCW 62A.2-318 states:

    A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

ORDER -- 7

advertising or otherwise, to a plaintiff." *Tex Enterps.*, 149 Wn. 2d at 209 (quoting *Baughn v. Honda Motor Co.*, 107 Wn. 2d 127, 151-52 (1986)). It appears to the Court that Mr. Solorio contends the ladder's label was an express guarantee by Louisville Ladder that the ladder would hold up to 300 pounds and that this guarantee was breached with the ladder gave way while Mr. Solorio was using it.

An express warranty is created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

RCW 62A.2-313(1). In order for an express warranty to be created, it is not necessary that the manufacturer use the terms "warrant" or "guarantee"; however, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." RCW 62A.2-313(2). Factors the court can consider to determine whether an express warranty was made are: specificity of the statement, whether the statement related to the quality of the good, the buyer's actual or imputed knowledge of the true conditions of the good, and the nature of the defect. *Fed. Signal Corp. v. Safety Factors, Inc.*, 125 Wn. 2d 413, 424-25 (1994).

The Court concludes it is undisputed that the ladder contained a label stating that the ladder could hold up to 300 pounds. It is a question for the jury whether the label constitutes either an

ORDER -- 8

"affirmation of fact or promise" or a "description of the goods."  Mr. Solorio, however, failed to present any evidence that he read or relied upon this label prior to or during the use of this ladder.  In addition, he agreed that Louisville Ladder did not make any express warranties to him. (Ct. Rec. 33 ¶ 2.)  Accordingly, the Court finds Plaintiff failed to present specific facts to create a genuine issue as to whether any express affirmation or description on the label was part of the basis of the bargain.  Defendant's motion is granted on this ground.

Louisville Ladder also argued that Plaintiff must present expert testimony to establish that any claimed defect in the ladder was the proximate cause of his injury.  RCW 7.72.030(2) imposes liability on a manufacturer if the claimant's harm was *proximately caused* by the product's failure to conform to the manufacturer's express warranty.  The Court concludes Washington does not *per se* require expert testimony to prove proximate cause in a breach of warranty action. *See Pagnotta v. Beall Trailers of Or., Inc.*, 99 Wn. App. 28 (2000); *Wagner v. Flightcraft, Inc.*, 31 Wn. App. 558 (1982).  Rather, a plaintiff is required to present sufficient evidence so that a jury can determine causation without resort to speculation. *Estate of Boron ex. rel. Anderson v. Wash. State Dep't of Corrs.*, 122 Wn. App. 227, 244 (2004). The Court concludes a reasonable juror is sufficiently knowledgeable about the structure and design of a ladder based on their general experience and common knowledge so that Mr. Solorio need not present expert testimony in order for the jury to determine, without resort to speculation, whether any claimed defect in the ladder was the proximate cause of Mr. Solorio's injuries. *See Mack Trucks, Inc. v. Tamez*, 206

ORDER -- 9

S.W. 3d 572, 583 (Texas 2006).

**D.   Conclusion**

Although the Court disagrees with Louisville Ladder's argument that expert testimony is necessary to prove proximate cause under the facts of this case, the Court grants Louisville Ladder's motion for summary judgment because (1) Mr. Solorio is not pursuing his "tort" claims, (2) Mr. Solorio may not pursue a breach of the implied warranty cause of action because he is not in vertical privity with Louisville Ladder, and (3) Mr. Solorio may not pursue a breach of an express warranty cause of action because he failed to present sufficient evidence that any affirmation or description on the ladder's label was the part of the "basis of the bargain."  For these reasons, **IT IS HEREBY ORDERED**:

1.   Defendant's Motion for Summary Judgment **(Ct. Rec. 13)** is **GRANTED.**

2.   **Judgment** is to be entered in Defendant's favor.

3.   This file shall be **CLOSED.**

**IT IS SO ORDERED.**   The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** this 7th        day of March 2008.


                          S/ Edward F. Shea
                          EDWARD F. SHEA
                UNITED STATES DISTRICT JUDGE

Q:\Civil\2006\0285.msj.wpd

ORDER -- 10